[No. 13260.    Department Two. — June 14, 1890.]

## R. H. BEAMER, ASSIGNEE, ETC., APPELLANT, *v.* JOHN W. FREEMAN, RESPONDENT.

CHATTEL MORTGAGE — REGISTRY — VALIDITY AS AGAINST CREDITORS — CONSTRUCTION OF CODE. — Section 2957 of the Civil Code, declaring that a mortgage of personal property is void as against creditors of the mortgagor unless it is recorded in the same manner as grants of real property, is designed to substitute the record of the mortgage for the actual delivery and change of possession, otherwise required by section 3440 of the same code.

ID. — ATTACHMENT BEFORE RECORD. — Without holding that such unrecorded mortgage is void *per se* as against creditors at large of the mortgagor, it is certainly void as against creditors who obtain a lien by attachment of the mortgaged personalty in the hands of the debtor before record of the chattel mortgage.

ID. — DISSOLUTION OF ATTACHMENT — EFFECT OF INSOLVENCY PROCEEDINGS. — Though such attachment is dissolved by subsequent proceedings in insolvency within one month, such dissolution does not inure to the benefit of the holder of the chattel mortgage which was unrecorded at date of the attachment.

ID. — REPLEVIN BY ASSIGNEE OF INSOLVENT. — The attached property may be recovered in an action of replevin by the assignee of the insolvent debtor, as having, by force of the attachment before record of the mortgage, remained in the insolvent debtor by operation of law.

ID. — DISPOSITION OF ATTACHED PROPERTY. — The attached property, when recovered by the assignee, must be regarded as a portion of the general assets of the insolvent, which must be disposed of for the common benefit of all his creditors.

ID. — CONSTRUCTION OF INSOLVENT ACT. — The Insolvent Act must receive a reasonable construction, in order to effectuate its object and promote justice; and it must be regarded as designed to protect the creditors of the insolvent, and not to give an advantage to their detriment to a mortgagee of personal property who had failed to acquire a lien by his own laches in not recording his mortgage before the property was attached.

APPEAL — REVERSAL OF JUDGMENT UPON FINDINGS — WAIVER OF DAMAGES. — When the findings show a right of the plaintiff to recover, and leave only the question of damages undetermined, an erroneous judgment for the defendant may be reversed, and judgment ordered for the plaintiff upon the findings, if he consents to waive damages.

APPEAL from a judgment of the Superior Court of Yolo County.

The facts are stated in the opinion.

*Hudson Grant,* for Appellant.

The assignee of the insolvent debtor can maintain this action as against the holder of the unrecorded chattel mortgage. (*Merrill* v. *Hurlburt,* 63 Cal. 495; *Brown* v. *Bank of Napa,* 77 Cal. 544; Insolvent Act of 1880, sec. 17; *Hanes* v. *Tiffany,* 25 Ohio St. 549; *Kilborne* v. *Fay,* 29 Ohio St. 264; 23 Am. Rep. 741; *Linderman* v. *Ingham,* 36 Ohio St. 1; *Bingham* v. *Jordan,* 1 Allen, 373; *Southard* v. *Benner,* 72 N. Y. 427; *Bracket* v. *Harvey,* 25 Hun, 502; *Shipman* v. *Ætna Ins. Co.,* 29 Conn. 254; *Mann* v. *Flower,* 25 Minn. 503; Civ. Code, secs. 2951, 3440; *Gassner* v. *Patterson,* 23 Cal. 300; *Thompson* v. *Van Vechten,* 27 N. Y. 581; *Woods* v. *Bugbey,* 29 Cal. 471; *Martin* v. *Thompson,* 63 Cal. 4, *Berson* v. *Nunan,* 63 Cal. 550; *Lockwood* v. *Slevin,* 26 Ind. 125; *Sidener* v. *Bible,* 43 Ind. 88; *Granger* v. *Adams,* 90 Ind. 88; *Farmers' etc. Co.* v. *Minnesota etc. Works,* 35 Minn. 546; *Currie* v. *Knight,* 34 N. J. Eq. 485.)

*R. Clark,* for Respondent.

The legal title became vested in defendant on the recording of the mortgage. (*Martin* v. *Thompson,* 63 Cal. 4; 35 Cal. 404; 14 Cal. 85; *Wilson* v. *Leslie,* 20 Ohio, 166.) A chattel mortgage upon the property, made and recorded while it was under attachment, would be good against all but the attaching creditor, and good as against an insolvency proceeding by the debtor.

GIBSON, C.— Action of replevin. Judgment passed for defendant, from which the plaintiff appeals.

November 4, 1882, Jeans executed and delivered to defendant a chattel mortgage of a portable steam-engine then in Yolo County, to secure the payment of a promissory note for $1,150. This mortgage was not recorded until August 13, 1886, when it was placed of record in Yolo County, and on the sixteenth day of the same

month it was recorded in San Joaquin County, Jeans having on the 1st of the same month, in the same year, removed the engine to the latter county.

August 11, 1886, Baker & Hamilton, creditors of Jeans, attached the engine in San Joaquin County, Jeans having retained the possession of it until that time. On the 20th of the same month, nine days after the attachment was levied, Jeans was adjudged an insolvent debtor, and the plaintiff was by his creditors elected as his assignee; and after having qualified as such, the clerk of the superior court of Yolo County, as required by law, executed and delivered to plaintiff an assignment of all the property of the insolvent debtor, Jeans. Thereupon the sheriff of San Joaquin County, who held the engine under the attachment levy, already referred to, delivered it to the plaintiff as such assignee. The engine, which is of the value of eight hundred dollars, was then taken from plaintiff's possession by defendant Freeman, who claimed it by virtue of the terms of his chattel mortgage upon it; and upon demand of the assignee therefor, refused to return it to him. Between the date on which the mortgage was made and that on which it was recorded in Yolo County, three years and nine months had elapsed, during which time Jeans incurred numerous liabilities, among which was the one upon which Baker & Hamilton obtained their attachment, who, with other creditors, filed their claim against the insolvent's estate.

It thus appears that the contest is between the creditors of the insolvent and his mortgagee under the chattel mortgage.

A mortgage of personal property is void against the creditors of the mortgagor unless it is recorded in the same manner as grants of real property. (Civ. Code, sec. 2957.) This law substitutes the record of the mortgage for the actual delivery and continued change of possession, made essential to effect transfers in other cases by

section 3440 of the Civil Code. (*Martin* v. *Thompson,* 63 Cal. 4; *Berson* v. *Nunan,* 63 Cal. 550.)

Appellant contends that the effect of the first-mentioned provision of the code is to make an unrecorded chattel mortgage absolutely void as to creditors and all other persons except the parties to it, and that whether the creditors secure liens by attachment, judgment, or execution before the mortgage is recorded makes no difference. The position assumed regarding the creditors is not free from doubt. In Jones on Chattel Mortgages, section 237, it is stated: " The only effect of delay in recording or filing a mortgage is to render it void against intervening purchasers or mortgagees or creditors obtaining liens by attachment, judgment, or execution." But from the view we take of this case, which will let the property in dispute inure to the benefit of all the creditors of the insolvent in the insolvency proceedings, we deem it unnecessary to resolve this doubt.

We think it clear, however, that, as Baker & Hamilton acquired a lien by attachment upon the engine before the mortgage upon it was recorded, as to them the mortgage is void, under section 2957 of the Civil Code, and the attachment levy prevented the title of the mortgagor from passing to the mortgagee. (See *Shipman* v. *Ætna Ins. Co.,* 29 Conn. 254.)

The lien so acquired by them was within one month prior to the commencement of the insolvency proceedings, and was, by force of the proceedings of section 17 of the Insolvency Act of 1880, dissolved, when the assignment of all the property of the insolvent was made, pursuant to that section, which reads as follows: —

"As soon as an assignee is appointed and qualified, the clerk of the court shall, by an instrument under his hand and seal of the court, assign and convey to the assignee all the estate, real and personal, of the debtor, with all his deeds, books, and papers relating thereto, and such assignment shall relate back to the commence-

ment of the proceedings in insolvency, and by operation of law shall vest the title to all such property and estate, both real and personal, in the assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any attachment made within one month next preceding the commencement of the insolvency proceedings. Such assignment shall operate to vest in the assignee all the estate of the insolvent debtor not exempt by law from execution."

What was the effect of the dissolution of the attachment? Assuming, without deciding, in accordance with the views of the trial court, that when the mortgage was placed of record it became operative against all the creditors whose right to the property of the insolvent did not attach until he was adjudged to be such, still, the fact remains that, before the recording of the mortgage, Baker & Hamilton acquired a valid lien upon the mortgaged chattel. This lien, though, was acquired subject to the provisions of section 17 of the Insolvent Act, which, when brought into operation, deprived them of their special lien. Now, to hold that the release of the lien thereby made was absolute, and deprived them of all right to pursue the property in the insolvency matter, would give an advantage to the mortgagee, to their detriment, which he, the mortgagee, failed to acquire in the first place by his laches in not recording his mortgage, and, in effect, convert the Insolvent Act, which is designed to protect creditors, into an instrument of wrong against them. It must receive a reasonable construction, in order to effectuate its object and promote justice. Applying this rule to it convinces us that the dissolution of the attachment made by it was not absolute, so as to let the record of the mortgage intervene and cut off the right of Baker & Hamilton, and leave them with other creditors, who might have been, up to that time, without recourse against the chattel, but only released the lien and transferred the title

to the property to the assignee as part of the assets of the insolvent, under section 17 of the above act. And as the title of the mortgagor was prevented from passing to the mortgagee by the attachment of Baker & Hamilton, it remained in the mortgagor until it was, by operation of law, transferred to the assignee, as the representative of all the creditors. Such transfer made him the owner of the chattel, but in trust for the creditors of the insolvent, and as such owner, he is entitled to recover either it or its value, in order to execute his trust. (Insolvent Act of 1880, sec. 21.)

The engine, then, having become a part of the assets of the insolvent, is it there for the benefit of Baker & Hamilton alone, or are all the other creditors entitled to a *pro rata* share of its proceeds?

"All creditors," declares section 31 of the same act, "whose debts are duly proved and allowed, shall be entitled to share in the property and estate *pro rata*, without priority or preference whatever, other than as provided in this act, and in section 1204 of the Code of Civil Procedure."

None of the exceptions referred to embrace this case. We therefore think it apparent that, as the assignee has no other power to discriminate between the creditors of the insolvent, the chattel in dispute must be regarded as a portion of the general assets, which must be disposed of for the common benefit of all the creditors.

The complaint, which is excepted to by the respondent, states a complete cause of action in replevin. In it is set forth the making of the mortgage on the engine; the failure to record it until after the attachment of the engine by Baker & Hamilton; the subsequent adjudication of the insolvency of the mortgagor; the appointment of plaintiff as assignee in the insolvency proceedings; the assignment to the latter of all the property of the insolvent; the taking of such property, including the engine, into the possession of the assignee;

the value of the engine; the taking of the same by the defendant from the possession of the assignee; the demand of the assignee for the return of the engine; the defendant's refusal to restore it, and the damages sustained by its detention, together with a prayer for the restitution of the property, or its value, and for damages.

As the findings show all the facts first-above stated, and cover all the issues, except as to the one relative to damages for the detention of the engine, and the appellant seems willing to waive such damages by requesting that judgment in his favor be ordered upon the findings, we therefore advise that the judgment be reversed, and the trial court directed to enter judgment in favor of plaintiff upon the findings, in accordance with this opinion.

FOOTE, C., and HAYNE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is reversed, and the court below directed to enter judgment in favor of plaintiff on the findings, in accordance with the above opinion.

Hearing in Bank denied.